UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEO GALLAGHER,
a/k/a "GALLAGHER,"
and SOLD OUT SHOWS, INC.,

        Plaintiffs/Counter-Defendants,

v.

RON GALLAGHER,

        Defendant/Counter-Plaintiff,

and

CLASSIC ENTERTAINMENT, INC.,
and CLASSIC PRODUCTIONS, INC.

        Defendants.

Case No. 99-75657

HON. PAUL D. BORMAN

---

### PLAINTIFF'S OPPOSITION TO DEFENDANT JOEL BOGORAD'S EMERGENCY MOTION FOR ORDER ENFORCING SETTLEMENT AND TEMPORARY RELIEF FROM PRELIMINARY INJUNCTION

    In an effort to have his cake and eat it too, Defendant Classic Productions, Inc., through its principal Joel Bogorad ("Bogorad"), seeks to enforce an executory agreement reached on June 1, 2000, and read into the record, at the deposition of Plaintiff, Leo Gallagher ("Gallagher"). Plaintiff failed to execute the agreement by wiring payment to Bogorad on June 2, as agreed. Notwithstanding the fact that this asserted breach occurred more than six (6) weeks ago, Bogorad has waited until the Court has issued its Preliminary Injunction Order before moving to enforce the settlement.

Furthermore, despite the clear intent of the agreement, which was to immediately stop Bogorad from booking and promoting Ron Gallagher, Bogorad scheduled a July 15 Ron Gallagher performance; has shows booked for July 28 - 29; and has booked several additional shows in September, 2000.

The only agreement in existence is the one reached at the June 1 deposition and read into the record by counsel [hereafter "June 1 Agreement"]. The terms of the June 1 Agreement, in essence, were the payment, by Gallagher, of $30,000 to Bogorad, such payment to be made by wire transfer on June 2, the very next day. This payment was in exchange for Bogorad's commitment and agreement to immediately cease all further work as a promoter for Ron Gallagher.

There is no dispute that Gallagher did not wire the money on June 2 or that, very soon thereafter, Gallagher suffered a series of heart attacks. There is also no dispute that the parties spoke directly during Gallagher's convalescence. The parties differ significantly, however, on the outcome of that discussion.

Bogorad asserts that, in this conversation, Gallagher consented to Classic Productions' continued production of shows until payment was made. This claim is fundamentally incorrect. Contrary to Bogorad's assertion, Gallagher did not give Mr. Bogorad permission to do more shows with Ron Gallagher. See Declaration of Leo A. Gallagher in Opposition to Emergency Motion, ¶ 2-4. Gallagher sought very strenuously throughout the conversation to convince Mr. Bogorad not to do more shows. Id. In Gallagher's mind, that was the very point of the agreement -- and the only basis for his agreement to pay Bogorad anything. Id.

QBMAD\22295X.1                           2

Bogorad's account of his conversation with Gallagher is also vague as to the term of Gallagher's alleged permission to Bogorad to continue to book Ron Gallagher's shows. According to Bogorad, Gallagher agreed to permit him to book shows for an unspecified "interim period," notwithstanding (1) that the Court's decision on Gallagher's motion for injunction was anticipated at any moment; and (2) that the settlement payment could be made at any time. This lack of specificity flies in the face of Bogorad's claim that the parties orally agreed to modify the June 1 deal. Bogorad's version of the conversation also contradicts the very purpose of the deal, including Gallagher's willingness to pay Bogorad money at all.

The only "deal" between the parties is the June 1 agreement. This agreement was to be put into effect on June 2, with Gallagher's wiring of the $30,000 payment to Bogorad's account. Gallagher's failure to effect this payment on June 2 breached the agreement; however, Bogorad can not sue to enforce the settlement now given his current activities. The doctrine of "election of remedies" bars him from doing so.

The elements of "election of remedies" are : (1) the existence of two or more remedies; (2) that such remedies rather than being "consistent and cumulative" are inconsistent; and (3) a choice of one of them. Riverview Cooperative, Inc. v. First Nat'l Bank and Trust Co. of Michigan, 417 Mich. 307, 312, 337 N.W.2d 225, 227 (Mich. 1983). Here, the existence of the first and third elements is clear. Bogorad had two primary remedies when Gallagher failed to make the agreed upon payment. Rather than stop promoting Ron Gallagher and suing for payment, he chose to continue to promote Ron Gallagher.

When Gallagher failed to pay by the agreed date, Mr. Bogorad faced a clear choice: (1) abide by the contract and seek enforcement (*i.e.*, do no more shows and file a motion with the

QBMAD\222958.1                          3

court); or (2) continue to book and promote shows for Ron Gallagher. He very clearly chose the second option, and, under the doctrine of "election of remedies," can not now seek to enforce the deal.

The only real issue for the court to determine is whether the remedies available to Bogorad as of June 2 were "consistent and cumulative" or "inconsistent." Remedies "are inconsistent if the assertion of one involves the negation or repudiation of the other." Jim-Bob, Inc. v. Mehling, 178 Mich.App. 71, 91, 443 N.W.2d 451, 460 (Ct. App. 1989). "More particularly, where the election of a remedy assumes the existence of a particular status or relation of the party to the subject matter of the litigation, another remedy is inconsistent if, in order to seek it, the party must assume a different and inconsistent status or relation to the subject matter." Id.

There can be no doubt that Bogorad's promotion of Ron Gallagher -- and his motion now seeking court approval to continue to promote Ron Gallagher through September – are emphatically a negation and repudiation of the June 1 Agreement. The most basic premise of the June 1 Agreement was to stop Mr. Bogorad from promoting Ron Gallagher and to end the need for the lawsuit. Bogorad's decision to continue booking and promoting Ron Gallagher, and his motion to the Court, which seeks to permit him to continue to promote Ron Gallagher shows into September 2000, bar him now from obtaining an Order enforcing the deal.

Respectfully submitted this 17th day of July, 2000.

*[signature: Douglas W. Sprinkle]*

Douglas W. Sprinkle (P25326)
GIFFORD, KRASS, GROH, SPRINKLE,
 ANDERSON & CITKOWSKI, P.C.
280 N. Old Woodward, Suite 400
Birmingham, MI 48009
(248) 647-6000
Fax: (248) 647-5210

James R. Cole (WI Bar 01013023)
Gregory T. Everts (WI Bar 01001636)
QUARLES & BRADY LLP
Firstar Plaza
One South Pinckney Street, Suite 600
P.O. Box 2113
Madison, WI 53701-2113
(608) 251-5000

**Attorneys for the Plaintiffs,
Leo A. Gallagher and Sold Out Shows, Inc.**

**Of Counsel**
Neal W. Knight, Jr.
Florida Bar No. 093737
ALLEY, MAASS, ROGERS & LINDSAY, P.A.
321 Royal Poinciana Plaza South
P.O. Box 431
Palm Beach, FL 33480-0431
(561) 659-1770
Fax: (561) 833-2261

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing PLAINTIFF'S OPPOSITION TO DEFENDANT JOEL BOGORAD'S EMERGENCY MOTION FOR ORDER ENFORCING SETTLEMENT AND TEMPORARY RELIEF FROM PRELIMINARY INJUNCTION was served via facsimile transmission and First Class Mail, postage prepaid, in an envelope addressed to:

Mark D. Evans
EVANS & PARKER, P.C.
1825 South Woodward Avenue
Suite 190
Bloomfield Hills, MI 48302

Shari Friedman Lesnick
30700 Telegraph Road, Suite 4646
Bingham Farms, MI 48025

Robert S. Rollinger
30700 Telegraph Rd., Suite 4646
Bingham Farms, MI 48025

on the 17th day of July, 2000.

/s/ Tammy E. Mayle

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

# SEE CASE FILE FOR ADDITIONAL DOCUMENTS OR PAGES THAT WERE NOT SCANNED